Filed 10/3/23

<u>CERTIFIED</u> <u>FOR</u> <u>PARTIAL</u> <u>PUBLICATION</u>*

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| THE PEOPLE,<br><br>      Plaintiff and Respondent,<br><br>  v.<br><br>PATRICK ALLEN TRENT,<br><br>      Defendant and Appellant. | C096306<br><br>(Super. Ct. No.<br>STK-CR-FE-1997-0006966) |

APPEAL from a judgment of the Superior Court of San Joaquin County, Lauren P. Thomasson, Judge. Reversed in part and affirmed in part.

The Law Office of Brad K. Kaiserman and Brad K. Kaiserman, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Erin Doering and Eric L. Christoffersen, Deputy Attorneys General, for Plaintiff and Respondent.

_____

* Pursuant to California Rules of Court, rules 8.1105 and 8.1110, this opinion is certified for publication with the exception of parts II and III.

1

In 1999, a jury convicted defendant Patrick Allen Trent of first degree murder (Pen. Code, § 187)[1] and street terrorism (§ 186.22, subd. (a)), but found not true the enhancements that defendant had personally used a knife (§ 12022, subd. (b)(1)) and that the murder had been committed for the benefit of a criminal street gang. (§ 186.22, subd. (b)(1).) The trial court sentenced defendant to 25 years to life plus eight months. This court affirmed that judgment in an unpublished opinion in 2001.[2] (*People v. Vasquez et al.* (Sept. 25, 2001, C032492) [nonpub. opn] (*Vasquez*).) Defendant's first degree murder conviction was later reduced to second degree murder in light of *People v. Chiu* (2014) 59 Cal.4th 155, resulting in the reduction of defendant's aggregate term to 15 years to life plus eight months.

Thereafter, in July 2020, defendant filed a petition for resentencing pursuant to former section 1170.95 (now section 1172.6),[3] which the trial court granted in a written ruling issued February 28, 2022. On March 28, 2022, the trial court redesignated the murder conviction as assault with force likely to cause great bodily injury with a great bodily injury enhancement and resentenced defendant to an aggregate term of six years eight months, comprised of: the middle term of three years for the felony assault, plus three years consecutive for the great bodily injury enhancement, plus a consecutive eight months (one-third the middle term) for the street terrorism conviction.

---

[1]    Undesignated statutory references are to the Penal Code.

[2]    We granted defendant's motion to incorporate by reference the appellate record in case No. C032492.

[3]    Effective June 30, 2022, the Legislature renumbered former section 1170.95 to section 1172.6. (Stats. 2022, ch. 58, § 10.) There were no substantive changes to the statute. Defendant filed his petition under former section 1170.95, but we will cite to current section 1172.6 throughout this opinion.

Defendant timely appealed and complains the trial court prejudicially erred in: (1) failing to retroactively apply Assembly Bill No. 333 (2021-2022 Reg. Sess.) (Assembly Bill 333) to his substantive gang conviction, and (2) imposing a great bodily injury enhancement to the redesignated offense. Finally, defendant requests that we correct the abstract of judgment to reflect that defendant's convictions were by jury, rather than by plea. The People oppose defendant's first two arguments, but agree the abstract of judgment requires correction.

We agree with the parties that the abstract of judgment should be corrected to reflect conviction by jury. We also agree with defendant that he is entitled to the retroactive application of Assembly Bill 333, requiring reversal of his section 186.22 conviction and remand for further proceedings. We otherwise affirm.

FACTUAL AND PROCEDURAL BACKGROUND

A.      *The underlying murder*

We summarize the evidence from our previous appellate opinion for context. Defendant and his codefendant Nico Luciano Vasquez were convicted of murdering Primotivo Villasana, a heroin addict and former member of "Northern Structure," a criminal street gang. The People theorized "the murder was the gang execution of a dropout to advance the defendants' status in Northern Structure." (*Vasquez, supra*, C032492.) In support of this theory, the People presented evidence that Tony Giminez, the leader of Northern Structure in Stockton who had turned state's evidence, identified defendant and Vasquez as Villasana's killers. Defendant and Vasquez killed Villasana because he was on the gang's "hit list." (*Ibid.*)

Vasquez's former girlfriend B.T. testified that Vazquez and defendant helped her move into an apartment near the murder scene on the day of the murder. The pair ran into Villasana at the door to her apartment, and the three men stayed outside talking and drinking while B.T. unpacked her belongings. "Vasquez came into the apartment twice—once to get more beer, and once to take something she could not see from a

3

kitchen drawer that contained knives. She later identified a broken knife handle and knife blade found at the scene, and testified her knives were not broken when she last saw them." (*Vasquez, supra*, C032492.)

"Vasquez told [B.T.] he was going for a walk around the corner. She watched defendants and Villasana head toward the park as it was starting to get dark. Vasquez returned about 45 minutes later, went to the drawer, and got a butcher knife with a wooden handle. He told [B.T.] the first knife had broken because it was too skinny. Vasquez said he needed the knife to take care of his business. [B.T.] testified Vasquez was mad, out of breath, but uninjured at the time.

"Vasquez returned 15 or 20 minutes later, looking like he had been fighting. His shirt was torn, and he was bleeding. He had a bloody knife with him, which [B.T.] put in the sink. Vasquez told her to clean it with alcohol or Clorox. He also told [B.T.] to say she had not seen him if the police came. [B.T.] cleaned the wound on Vasquez's hand, and put a towel over it. Vasquez took her car, saying he was going to take [defendant] home, then return. Vasquez did not return to the apartment that night.

"[B.T.] saw Vasquez at his sister's house several days after Villasana was killed. He showed [B.T.] a newspaper article about the murder and explained, 'This is what I did last night.' He said he threw the clothes he was wearing into a creek behind his mother's house. Vasquez later told [B.T.] he cut Villasana's throat, and one of the knives broke during the assault. Vasquez and [defendant] met with [B.T.] to discuss what to tell police about the night of the murder.

"At some point after the murder, [B.T.] watched while [defendant] had a star tattooed under his eye. Vasquez said, 'He's a killer now.' [B.T.] also heard Vasquez tell [defendant] 'he done killed a man.' " (*Vasquez, supra*, C032492.)

Xavier Lozano testified as part of a plea agreement. According to Lozano, "he previously held the highest position in Northern Structure, responsible for overall security inside and outside of prison. He testified that Vasquez had been a gang member for three

4

or four years, and [defendant] was a sympathizer.  While Lozano was imprisoned at Pelican Bay, he received instructions that all dropouts in Stockton should be killed.  He relayed the information directly to Giminez and Vasquez upon his parole.  Lozano explained that by killing Villasana, defendants would gain status within Northern Structure, and possibly become eligible for membership in Nuestra Familia." (*Vasquez, supra*, C032492.)

Defendant testified in his defense, acknowledging he left B.T.'s apartment with Vasquez and Villasana to get more beer.  The other men were behind him, and defendant turned around to see Vasquez and Villasana wrestling on the ground.  Vasquez repeatedly punched Villasana, but defendant denied seeing a knife or "kicking, punching, or touching Villasana in any way." (*Vasquez, supra*, C032492.)  Defendant left the park, and Vasquez eventually caught up.  Defendant admitted obtaining the star tattoo, but denied it held "special significance." (*Ibid.*)

B.    *Legal background*

Effective January 1, 2019, Senate Bill No. 1437 (2017-2018 Reg. Sess.) (Senate Bill 1437) significantly limited the scope of the felony-murder rule and eliminated liability for murder under the natural and probable consequences doctrine through two key provisions.  (Stats. 2018, ch. 1015, § 1, subd. (f); see *People v. Strong* (2022) 13 Cal.5th 698, 707-708 (*Strong*).)  First, Senate Bill 1437 amended section 189 so that "[d]efendants who were neither actual killers nor acted with the intent to kill can be held liable for murder only if they were 'major participant[s] in the underlying felony and acted with reckless indifference to human life.' " (*Strong, supra*, at p. 708, citing § 189, subd. (e)(3).)  Second, it amended section 188 to provide that when the felony-murder rule does not apply, a principal in the crime of murder can only be convicted where they acted "with malice aforethought," and "[m]alice shall not be imputed to a person based solely on his or her participation in a crime." (§ 188, subd. (a)(3); see *People v. Gentile* (2020) 10 Cal.5th 830, 842-843.)

5

Senate Bill 1437 also established a new procedure to allow defendants who could not have been convicted under the new law to petition the sentencing court to vacate their murder conviction and resentence them on any remaining counts. (See § 1172.6, subd. (a); *Strong, supra*, 13 Cal.5th at p. 708.) After receiving a petition containing the required information, "the court must evaluate the petition 'to determine whether the petitioner has made a prima facie case for relief.' " (*Strong*, at p. 708, citing § 1172.6, subd. (c).) If the defendant makes a prima facie showing of entitlement to relief, the court must issue an order to show cause and hold an evidentiary hearing. (§ 1172.6, subds. (c), (d)(3).)

Effective January 1, 2022, Senate Bill No. 775 (2021-2022 Reg. Sess.) (Senate Bill 775) amended section 1172.6 to clarify certain aspects of the law, including that (1) the burden of proof at a resentencing hearing under this section is "on the prosecution to prove, beyond a reasonable doubt, that the petitioner is guilty of murder" under California law as amended by Senate Bill 1437, and (2) "[a] finding that there is substantial evidence to support a conviction for murder . . . is insufficient to prove, beyond a reasonable doubt, that the petitioner is ineligible for resentencing." (§ 1172.6, subd. (d)(3); see also Stats. 2021, ch. 551, § 1, subd. (c).) Senate Bill 775 also clarified that the trial court's role in a section 1172.6 proceeding is to act as an independent fact finder and determine, in the first instance, whether the petitioner committed murder under the law as amended by Senate Bill 1437. (*People v. Clements* (2022) 75 Cal.App.5th 276, 294, 297.)

"If the prosecution fails to sustain its burden of proof, the prior conviction, and any allegations and enhancements attached to the conviction, shall be vacated and the petitioner shall be resentenced on the remaining charges." (§ 1172.6, subd. (d)(3).) "The petitioner's conviction shall be redesignated as the target offense or underlying felony for resentencing purposes if the petitioner is entitled to relief pursuant to this section, murder or attempted murder was charged generically, and the target offense was not charged.

6

Any applicable statute of limitations shall not be a bar to the court's redesignation of the offense for this purpose." (§ 1172.6, subd. (e).)

C. *The resentencing proceedings*

On July 1, 2020, defendant filed a petition for resentencing pursuant to section 1172.6. On June 7, 2021, the trial court determined defendant had made a prima facie showing of eligibility for relief. On February 28, 2022, the trial court determined that the record of conviction (which was the total record before it) was insufficient to establish beyond a reasonable doubt that defendant "meets one of the three criteria set forth in [section 189, subdivision] (e)(1)-(3) to be convicted of murder under the law as amended."

In their resentencing briefs, the parties disagreed over the redesignation and ultimate sentence. The People argued the murder should be redesignated assault with a deadly weapon (§ 245, subd. (a)(1)) or assault with force likely to cause great bodily injury. (§ 245, subd. (a)(4).) The People also requested an enhancement for personal infliction of great bodily injury (§ 12022.7, subd. (a)) and that the court impose an upper term sentence. Defendant argued the murder should be redesignated as simple misdemeanor assault (§ 240) or battery. (§ 242.) Defendant further argued amendments made by Assembly Bill 333 should be applied retroactively, requiring the reversal of his section 186.22 conviction. Finally, defendant requested imposition of a low or midterm sentence in light of legislative changes made to triad sentencing.

At the resentencing hearing on March 28, 2022, defendant argued that the People had not proven the great bodily injury enhancement beyond a reasonable doubt because the record did not disclose whether the victim's broken nose was a displaced fracture. Ultimately, the trial court denied defendant's request to vacate the gang conviction, finding section 1172.6 concerned the murder conviction and "doesn't talk about resentence as if the defendant had not been convicted." The court then redesignated the murder conviction to assault with force likely to produce great bodily injury (§ 245,

7

subd. (a)(4)),[4] found a broken nose constituted great bodily injury, and added an enhancement for great bodily injury. (§ 12022.7, subd. (a).) The court then resentenced defendant to an aggregate term of six years eight months, comprised of: the middle term of three years for the felony assault, plus three years consecutive for the great bodily injury enhancement, plus a consecutive eight months (one-third the middle term) for the gang conviction. Defendant timely appealed.

DISCUSSION

I

*Retroactive Application of Assembly Bill 333*

Defendant argues the trial court erred in failing to retroactively apply the changes brought about by Assembly Bill 333 to his gang conviction, requiring reversal of that conviction and remand for possible retrial on that count. The People do not dispute that Assembly Bill 333 applies retroactively to all nonfinal judgments, or that reversal and remand for further proceedings would be required if Assembly Bill 333 applies retroactively. We concur with these concessions. (See *People v. Sek* (2022) 74 Cal.App.5th 657, 667 [*Estrada* retroactivity applies to Assembly Bill 333]; *People v. Cooper* (2023) 14 Cal.5th 735, 742, 746-747 [reversing because trial court's failure to instruct on new substantive requirements brought about by Assembly Bill 333 was not harmlessness beyond a reasonable doubt] (*Cooper*).)[5] The People dispute, however, that vacatur of defendant's murder conviction under section 1172.6 renders defendant's

---

**4** While the court's original pronouncement identified section 245, subdivision (a)(4) as the applicable subdivision for this count, it was later amended to reflect that at the time of defendant's original conviction, assault with force likely to produce great bodily injury was actually found in section 245, subdivision (a)(1).

**5** *In re Estrada* (1965) 63 Cal.2d 740.

section 186.22, subdivision (a) conviction nonfinal for these purposes. We find that defendant has the better argument here.

There is no published authority addressing whether the granting of a petition for resentencing pursuant to section 1172.6 renders a substantive gang offense nonfinal for purposes of the retroactive application of Assembly Bill 333's amendments.[6]

There is, however, authority holding that these amendments apply in the context of a recall and resentencing conducted pursuant to former section 1170, subdivision (d).[7] (*People v. Salgado* (2022) 82 Cal.App.5th 376, 378.) *Salgado* reasoned that the Supreme Court recognized, in *People v. Padilla* (2022) 13 Cal.5th 152 (*Padilla*), that " 'once a court has determined that a defendant is entitled to resentencing, the result is vacatur of the original sentence, whereupon the trial court may impose any appropriate sentence.' ([] *Padilla*[*, supra*, at p.] 163.)" (*Salgado, supra*, at p. 380.) "Accordingly, when Salgado was resentenced under former section 1170, subdivision (d), his criminal judgment was 'no longer final.' (*People v. Montes* (2021) 70 Cal.App.5th 35, 47-48 ['[R]esentencing pursuant to section 1170, subdivision (d), effectively vacated the earlier judgment.'].)" (*Salgado*, at p. 380.)

---

[6]     Assembly Bill 333, "effective January 1, 2022, amended the substantive offense of active participation 'in a criminal street gang' as well as the sentencing enhancement available for a felony committed 'for the benefit of, at the direction of, or in association with a criminal street gang, with the specific intent to promote, further, or assist in criminal conduct by gang members.' (Stats. 2021, ch. 699, § 3; [] § 186.22, subds. (a), (b)(1).)" (*Cooper, supra*, 14 Cal.5th at p. 738, fn. omitted.)

[7]     Assembly Bill No. 1540 (2021-2022 Reg. Sess.) moved former section 1170, subdivision (d) to a newly created section 1170.03. (Stats. 2021, ch. 719, §§ 3.1, 6.) Assembly Bill No. 200 (2021-2022 Reg. Sess.) renumbered section 1170.03 as section 1172.1. (Stats. 2022, ch. 58, § 9.) These changes are not relevant to this appeal.

The People argue that *Salgado*'s reliance on *Padilla* was misplaced, and that *Padilla* actually supports the nonapplication of Assembly Bill 333 to a long-final gang conviction. We do not read *Padilla* this way.

*Padilla* addressed "whether Proposition 57 [(the Public Safety and Rehabilitation Act of 2016) (Proposition 57)] applies during resentencing when a criminal court sentence imposed on a juvenile offense before the initiative's passage has since been vacated." (*Padilla, supra*, 13 Cal.5th at p. 158.) In *Padilla*, the defendant "was originally sentenced before Proposition 57 was enacted, but his judgment later became nonfinal when his sentence was vacated on habeas corpus and the case was returned to the trial court for imposition of a new sentence." (*Padilla*, at p. 158.) Thus, the majority concluded, Proposition 57 applied to his resentencing. (*Ibid*.)

*Padilla* explained, "A case is final when 'the criminal proceeding as a whole' has ended ([*People v*.] *Esquivel*[ (2021)] 11 Cal.5th [671,] 678) and 'the courts can no longer provide a remedy to a defendant on direct review' [Citation.] When Padilla's sentence was vacated, the trial court regained the jurisdiction and duty to consider what punishment was appropriate for him, and Padilla regained the right to appeal whatever new sentence was imposed. His judgment thus became nonfinal, and it remains nonfinal in its present posture because the Court of Appeal ordered a second resentencing, from which the Attorney General now appeals. There is no 'constitutional obstacle' to applying the *Estrada* presumption to his case. (*Esquivel*, at p. 679.)" (*Padilla, supra*, 13 Cal.5th at pp. 161-162.)

*Padilla* rejected the proposed distinction between "cases that are nonfinal because the defendant is undergoing retrial or resentencing" and those " 'not yet final on initial review.' " (*Padilla, supra*, 13 Cal.5th at p. 162.) The court reasoned, "*Estrada* made no such distinction. The *Estrada* presumption stems from our understanding that when the Legislature determines a lesser punishment is appropriate for a particular offense or class of people, it generally does not wish the previous, greater punishment—which it now

10

deems 'too severe'—to apply going forward. [Citation.] We presume the Legislature intends the reduced penalty to be used instead in all cases in which there is no judgment or a nonfinal one, and in which it is constitutionally permissible for the new law to control. (See *ibid*.; *People v. Esquivel, supra*, 11 Cal.5th at p. 677.)" (*Padilla*, at p. 162.)

The Attorney General highlights the last paragraph of the majority's opinion, which addressed the People's argument that applying Proposition 57 to a defendant's vacated sentence would be inconsistent with principles limiting modification of judgment after initial finality. Therein, *Padilla* stated, "[T]he right and remedy we recognize today does not allow Padilla to raise claims unrelated to his sentence." (*Padilla, supra*, 13 Cal.5th at p. 169.) Rather, the defendant would receive a transfer hearing wherein the juvenile court will decide whether "criminal adjudication is appropriate for the murder of his mother and conspiracy to kill his stepfather." (*Id*. at p. 170.) "Whatever potential that [transfer] hearing may have for reducing his punishment (the nonfinal part of his judgment), it does not authorize or constitute relitigation of guilt." (*Ibid*.)

The Attorney General, however, fails to provide authority showing that once defendant's collateral attack successfully vacated his murder conviction—entitling him to redesignation and resentencing (§ 1172.6, subd. (e))—he was not then entitled under *Padilla* to the retroactive application of ameliorative laws that benefitted him. (See *Padilla, supra*, 13 Cal.5th at pp. 161-163; *People v. Guillory* (2022) 82 Cal.App.5th 326, 335-336 [defendant's original judgment remained final through the granting of an order to show cause and would only be subject to retroactivity if his conviction was vacated pursuant to section 1172.6, subdivision (d)].) We believe the final paragraph of *Padilla* was intended to allay concerns that the defendant in that case would request a new adjudication of his guilt in the juvenile court itself and was not intended to divorce the court's retroactivity analysis from instances in which the retroactive relief would result in a more favorable sentence because the underlying change required reversal of a count of conviction for possible retrial.

11

It is worth noting that other intermediate appellate courts have determined that resentencing pursuant to a section 1172.6 petition reopens the judgment for purposes of retroactivity of ameliorative laws. (See *People v. Keel* (2022) 84 Cal.App.5th 546, 551 [following the vacatur of defendant's murder conviction, Proposition 57 and Senate Bill No. 1391 (2017-2018 Reg. Sess.) applied to defendant's resentencing pursuant to section 1172.6, subdivision (d)(3)]; *People v. Ramirez* (2021) 71 Cal.App.5th 970, 996 [same] (*Ramirez*).) This is so because, even though a defendant's conviction may have been final before the petition, section 1172.6 provides "a defendant who succeeds on a resentencing petition is entitled to 'vacat[ur] [of] the murder . . . conviction and to recall [of] the sentence and resentenc[ing] . . . on any remaining counts *in the same manner as if the petitioner had not previously been sentenced, provided that the new sentence, if any, is not greater than the initial sentence*.' (§ 1172.6, subd. (d)(1)[, italics added]; see also *id*., subd. (d)(3) ['If the prosecution fails to sustain its burden of proof, the prior conviction, and any allegations and enhancements attached to the conviction, shall be vacated and the petitioner shall be resentenced on the remaining charges.'].)" (*Keel, supra*, at p. 564.) Thus, once the petition for resentencing was granted and defendant's murder conviction vacated, the judgment was no longer final for purposes of *Estrada* retroactivity, entitling a defendant to the benefit of ameliorative legislation. (*Id.* at p. 565; *Ramirez, supra*, at pp. 996, 998-999.)

This conclusion also is consistent with the "full resentencing rule," which affords a resentencing court the authority to conduct " 'a full resentencing as to all counts . . . so the trial court can exercise its sentencing discretion in light of the changed circumstances.' " (*Ramirez, supra*, 71 Cal.App.5th at p. 999, citing *People v. Buycks* (2018) 5 Cal.5th 857, 893-894.) Resentencing is not limited to "just the portion [of the sentence] subjected to recall." (*Buycks, supra*, at p. 893.) Rather, "the full resentencing rule allows a court to revisit all prior sentencing decisions when resentencing a defendant." (*People v. Valenzuela* (2019) 7 Cal.5th 415, 424-425.)

12

Like the court in *Ramirez*, we see no reason to distinguish *Estrada* retroactivity for purposes of a judgment vacated under former section 1170, subdivision (d), versus one vacated pursuant to section 1172.6, subdivisions (d) and (e). (*Ramirez, supra*, 71 Cal.App.5th at pp. 998-999.) Once defendant obtained vacatur of his murder conviction, he had a right to be resentenced "on any remaining counts in the same manner as if the petitioner had not previously been sentenced." (§ 1172.6, subd. (d)(1).) Thus, he was entitled to retroactive application of Assembly Bill 333. (*Padilla, supra*, 13 Cal.5th at pp. 161-163.)

We accept the People's concession that reversal of the section 186.22, subdivision (a) conviction is required in light of our conclusion concerning retroactivity. Accordingly, we will reverse this conviction and remand so that the People may elect whether to retry that offense in compliance with the amendments brought about by Assembly Bill 333. (*Cooper, supra*, 14 Cal.5th at pp. 739, 746-747.)

II

*Inclusion of an Uncharged Enhancement in the Redesignation*

Defendant brings a multifaceted challenge to the trial court's decision to impose a great bodily injury enhancement on his redesignated conviction. He complains the imposition of this uncharged enhancement violated his state and federal rights to a jury trial, due process, and notice of the charges. The People counter that defendant forfeited this argument by failing to raise it in the trial court, and defendant has failed to show his counsel was ineffective for not raising the issue. Given defendant's ineffective assistance of counsel claim, we will address the merits. Having done so, we conclude the trial court did not err.

Here, the information generically alleged a violation of section 187, averring defendant and Vasquez "did willfully and unlawfully and intentionally and with malice aforethought murder PRIMOTIVO VILLASANA, a human being." Thereafter, the jury was instructed on aiding and abetting, as well as various forms of murder, including

13

murder under the natural and probable consequences doctrine. Those instructions identified "assault or battery" as the target offense. However, those offenses were not charged, nor did the verdict forms ask the jury to determine defendant's guilt as to any target offense. The information did not allege, nor was the jury asked to determine, whether the victim suffered great bodily injury as defined in section 12022.7, subdivision (a).

We thus begin our analysis with section 1172.6, subdivision (e), which describes the court's power to redesignate defendant's murder offense under these circumstances. It states: "The petitioner's conviction shall be redesignated as the target offense or underlying felony for resentencing purposes if the petitioner is entitled to relief pursuant to this section, murder or attempted murder was charged generically, and the target offense was not charged. Any applicable statute of limitations shall not be a bar to the court's redesignation of the offense for this purpose." (§ 1172.6, subd. (e).)

There is a split of authority on whether section 1172.6, subdivision (e) authorizes a trial court to impose an uncharged sentence enhancement after vacating a murder conviction and resentencing on the target offense or underlying felony. (*People v. Arellano* (2022) 86 Cal.App.5th 418, 435-436 [imposing enhancement not permitted], review granted Mar. 15, 2023, S277962 (*Arellano*); *People v. Howard* (2020) 50 Cal.App.5th 727, 741-742 [imposing enhancement permitted], review den. Sept. 9, 2020, S263486 (*Howard*).) Our Supreme Court has granted review in *Arellano* to decide the issue, and pending the Supreme Court's decision, we concur with *Howard* that section 1172.6, subdivision (e) did not preclude the trial court from redesignating the murder count as felony assault with a great bodily injury enhancement.

The court in *Howard* upheld imposition of a sentence for first degree burglary with a violent felony designation and arming enhancement following vacatur of

14

defendant's murder conviction under section 1172.6.**8** (*Howard, supra*, 50 Cal.App.5th at p. 730.) *Howard* rejected that "section [1172.6], subdivision (e) requires the trial court to designate the lesser degree of the underlying felony—even when the evidence at trial shows the commission of the greater degree. . . . Section [1172.6], subdivision (e) states the court 'redesignate[s] . . . the . . . underlying felony for resentencing purposes.' (§ [1172.6], subd. (e).) It does not direct the court to impose the lesser degree of the felony offense. Had the Legislature intended to dictate such a result, 'it easily could have done so.' " (*Howard*, at p. 738.)

Moreover, *Howard* concluded that while section 1172.6, subdivision (d)(3) expressly limits what a court may consider when making the merits eligibility determination, "subdivision (e) contains no such language. Reading subdivisions (d)(3) and (e) together suggests the Legislature knew how to circumscribe the court's redesignation decisionmaking power and declined to do so." (*Howard, supra*, 50 Cal.App.5th at p. 739.) Therefore, this comparison supported its conclusion "that the Legislature intended to grant the trial court flexibility when identifying the underlying felony for resentencing under subdivision (e)." (*Ibid*.)

Further, *Howard* determined that not requiring imposition of a lesser sentence was consistent with the legislation's stated purpose "to 'eliminat[e] lengthy sentences which have been declared incommensurate with the culpability of defendants such as [Howard],' and instead punish a defendant according to his ' "own level of individual culpability." ' " (*Howard, supra*, 50 Cal.App.5th at p. 739.) Nor was defendant's right to a fair trial or due process violated because the retroactive relief provided by section

---

**8** For consistency, we refer to section 1172.6 even though *Howard* analyzed former section 1170.95. (*Howard, supra*, 50 Cal.App.5th at p. 730.) As previously mentioned, there were no substantive changes when the Legislature renumbered that provision. (See *ante*, fn. 3.)

1172.6 is an act of lenity, which does not implicate defendant's constitutional rights.[9] (*Howard*, at p. 740.)

Finally, *Howard* concluded the trial court's redesignation resentencing authority is broad enough to include any enhancements proven by the People beyond a reasonable doubt at the resentencing hearing. (*Howard, supra*, 50 Cal.App.5th at p. 741.) The only limitation at resentencing is that the new sentence cannot be longer than the original. (*Id.* at p. 742, citing § 1172.6, subd. (d)(1).)

*Howard* reasoned, "Our conclusion finds support in the principle that '[t]o the extent the court is determining the sentence to impose after striking the murder conviction, the traditional latitude for sentencing hearings should be allowed.' [Citation.]" (*Howard, supra*, 50 Cal.App.5th at pp. 741-742.) It is also consistent with the statute's goal of punishing a defendant "commensurate with his individual culpability." (*Id.* at p. 742.) *Howard* continued, it is not necessary that the felony designation be charged, nor that the enhancement be proven to a jury. Section 1172.6, subdivision (e) authorized redesignation and subdivision (d)(1) authorized resentencing " 'as if [he] had not been previously . . . sentenced.' " (*Howard*, at p. 742.) Accordingly, because the evidence established "beyond any possible dispute" (*ibid.*) that the murder was committed by an accomplice during the course of a burglary of a residence and that victim was fatally shot, the trial court did not err in redesignating the offense as first degree burglary with a violent felony designation and arming enhancement. (*Id.* at pp. 730-732, 742.)

---

[9]    We acknowledge that *People v. Silva* (2021) 72 Cal.App.5th 505, 523-524 recognized a limited due process right to notice concerning the offenses to be utilized in the redesignation, as well as the sentence requested. Here, the People's sentencing brief —–filed a week before defendant's sentencing brief and 19 days before the redesignation/resentencing hearing—provided sufficient notice.

As noted, *ante*, the court in *Arellano* disagreed with *Howard*, finding a trial court may not include a sentence enhancement in the target offense or underlying felony when redesignating a conviction under section 1172.6, subdivision (e). (*Arellano, supra*, 86 Cal.App.5th at pp. 422-423, 434.) It did this by focusing on "the plain meaning of the phrase, '[t]he petitioner's conviction shall be redesignated *as the target offense or underlying felony* for resentencing purposes' found in section 1172.6, subdivision (e)." (*Arellano*, at p. 434, italics added.) As borne out by the Penal Code and caselaw, *Arellano* highlighted that substantive offenses and enhancements are different things; enhancements are not punishable without the underlying base offense. (*Id*. at pp. 435-436.)

*Arellano* explained: "By directing that the vacated conviction shall be redesignated only 'as the target offense or underlying felony for resentencing purposes' (§ 1172.6, subd. (e)) and failing to mention sentence enhancements, the Legislature spoke to both redesignation of the conviction and resentencing for that conviction. That is, through the specific language it chose for section 1172.6, subdivision (e), the Legislature stated that 'for resentencing purposes,' the newly redesignated conviction shall include only the offense upon which liability for murder or attempted murder was based. [¶] Although this interpretation of section 1172.6, subdivision (e), limits resentencing to the target offense or underlying felony, such interpretation does not result in absurd consequences the Legislature did not intend. It simply limits a petitioner's exposure in a relatively definite manner to only a specific offense and avoids the complexities that could arise in deciding which of the myriad sentencing enhancements in our penal law might be applicable to a particular factual scenario." (*Arellano, supra*, 86 Cal.App.5th at p. 436.)

The court in *Arellano* further supported this interpretation by comparing the language in section 1172.6, subdivision (d). (*Arellano, supra*, 86 Cal.App.5th at p. 436.) "In subdivision (d)(3) of section 1172.6, the Legislature specifically mentioned

17

'enhancements attached to the [prior] conviction' when mandating vacatur if the prosecution fails to sustain its burden at a hearing under that subdivision to prove a petitioner's guilt of murder or attempted murder under amended section 188 or 189. Subdivision (d)(3) of section 1172.6 thus evinces the Legislature's awareness of the difference between a conviction for an offense and an enhancement attached to the conviction. In addition, the Legislature's use of the terms 'any remaining counts' and 'the remaining charges' in subdivision (d)(1) and (3), when contrasted against the more specific phrase 'target offense or underlying felony' in subdivision (e), suggests that the Legislature intended the redesignation and resentencing under subdivision (e) to be narrower than any resentencing that would occur when there are remaining counts or charges (which would include any attached sentence enhancements) after the murder, attempted murder, or manslaughter conviction is vacated under section 1172.6." (*Arellano*, at p. 436.)

*Arellano* concluded: "Given the settled distinction in our penal law between an 'offense' and a sentence enhancement and the statutory framework of section 1172.6 as a whole, we conclude that the phrase 'target offense or underlying felony' in section 1172.6, subdivision (e), does not authorize a court to include a sentence enhancement when it redesignates a vacated conviction as the target offense or underlying felony for resentencing purposes under that subdivision." (*Arellano, supra*, 86 Cal.App.5th at p. 437, fn. omitted.) *Arellano* nonetheless urged the Legislature to "clarify whether this subdivision (1) applies to crimes that were originally charged but dismissed prior to the original murder conviction and (2) authorizes a court to include sentence enhancements when resentencing on a target offense or underlying felony." (*Ibid.*)

Our Supreme Court will definitively resolve the question, but until it does, we believe the result in *Howard* better comports with the purpose and intent of section 1172.6 and the goal of evenhanded sentencing tailored to the gravity of a defendant's conduct. We therefore hold section 1172.6 does not bar the trial court from imposing a

sentence enhancement as part of the redesignation of defendant's vacated murder conviction.

## III

### *The Abstract of Judgment*

Finally, the parties concur that the amended abstract of judgment must be corrected to reflect defendant's convictions were by jury, rather than by plea. We will direct the trial court on remand to prepare an amended abstract of judgment to reflect that defendant's convictions were by jury, not by plea.

### DISPOSITION

Defendant's section 186.22, subdivision (a) conviction is reversed, and the matter remanded to the trial court for possible retrial of that count in compliance with the amendments brought about by Assembly Bill 333. The trial court also is directed to prepare an amended abstract of judgment, which shall reflect this change and that defendant's convictions had been by jury, not by plea. The judgment is otherwise affirmed.


/s/
_____

Krause, J.

We concur:


/s/
_____

Earl, P. J.


/s/
_____

Robie, J.